# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| SCOTT ALAN McCASKILL AND | * | Case No. 09-31390 |
| LISA MARIE McCASKILL, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| NORMAN ROUSE, Chapter 7 Trustee, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Adversary No. 10-3006 |
| | * | |
| UNIVERSITY NATIONAL BANK, | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

The Chapter 7 trustee, Norman Rouse ("Trustee"), seeks to avoid under 11 U.S.C. § 547(b) a transfer ("Transfer") that occurred when the Defendant, University National Bank ("UNB"), perfected within 90 days of the petition date a lien on an automobile owned by the Debtors.

To avoid a preference, a trustee must establish every element of 11 U.S.C. § 547(b). That is, the transfer must have been: (1) of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed by the debtor before such transfer was made; (4) made while the debtor was insolvent; (5) within 90 days before the date of the filing of the petition; and (6) that enables the creditor to receive more than the creditor would receive if the case was a case under Chapter 7 of this title and the transfer had not been made.[1]

UNB concedes all but the last of these elements. Specifically, UNB contends that the Transfer was not preferential because it did not enable UNB to receive more than UNB would have received had the Transfer not taken place, inasmuch as UNB had a lien against another automobile previously owned by the Debtors, and that lien (supposedly) was not released until the Transfer occurred. Alternatively, the bank contends that § 547(c)(1) – the "contemporaneous exchange for new value" defense – insulates the Transfer from avoidance for essentially the same reason, *i.e.*, the

---

[1] 11 U.S.C. § 547(b)(1)-(5).

perfection of the lien on one vehicle was substantially contemporaneous with the release of the lien on the other vehicle.

For the reasons stated below, the Court finds that the Transfer constitutes an avoidable preference under § 547(b), but § 547(c)(1) shields it from avoidance.

## BACKGROUND

The facts are straightforward and undisputed. On or about June 25, 2009, the Debtors, Scott and Lisa McCaskill, borrowed $131,500 from University National Bank.[2] As collateral for the loan, the Debtors granted UNB a security interest in a 2007 Chevrolet Suburban as well as other property.

On or about August 6, 2009, the Debtors executed a loan modification and a security agreement substituting a 2006 BMW X3 for the 2007 Chevrolet Suburban as collateral for the loan.

The Debtors then traded the X3 for a 2006 BMW 330 Xi on September 19, 2009. Four days later, on September 23, 2009, the Debtors executed another loan modification and security agreement, this time substituting the 330 Xi for the X3 as collateral for the loan. The Bank filed a "Release of Lien" on the X3 and a "Notice of Lien" on the 330 Xi at essentially the same time, on or about October 23, 2009, but this was more than 30 days after the Debtors had made the trade and acquired the 330 Xi.[3] The Debtors filed for protection under Chapter 7 of the Bankruptcy Code less than ninety days later, on November 16, 2009.

## DISCUSSION

As noted, UNB argues that it did not improve its collateral position and did not receive more as a result of the Transfer than it would have received had the Transfer not been made because its lien on the 330 Xi was perfected contemporaneously with the release of its lien on the X3.

This argument is without merit, however, because UNB's lien on the X3 was "released," or at least became legally unenforceable, when the Debtors executed a modification agreement and

---

[2] This appears to have been the renewal of an existing promissory note.

[3] The notice of lien was dated October 19 but filed electronically on October 23.

security agreement substituting the 330 Xi for the X3 as collateral for their debt to UNB on September 23, 2009 – thirty days before UNB perfected its lien in the 330 Xi.[4]

Under Missouri law, a lien attaches to collateral when: (1) the secured party takes possession of the collateral or signs a security agreement that contains a description of the collateral, (2) value has been given, and (3) the debtor has rights in the collateral.[5] However, if a security agreement is modified to describe different collateral, the lien on the collateral previously described would no longer be effective, *i.e.,* it would be "released." And that is exactly what happened here. UNB's later notification to the Kansas Department of Revenue on October 23 "releasing" the lien amounted to little more than a ministerial act removing UNB as a lienholder from the title to the X3. Consequently, at the time UNB perfected its lien on the 330 Xi, it was no longer secured by the X3, and the perfection of the lien on the 330 Xi enabled it to receive more in the Debtors' Chapter 7 bankruptcy than if that Transfer had not taken place. Therefore, the Court finds that the Trustee has established all of the elements of a preferential transfer under §547(b).

Nevertheless, the Trustee cannot avoid the Transfer effected when UNB perfected its lien on the 330 Xi because, as UNB argues, the Transfer was part of a contemporaneous exchange for new value and is thus shielded from avoidance by § 547(c)(1).

To establish a defense under §547(c)(1), the transferee of the preferential transfer must demonstrate by a preponderance of the evidence that (1) the parties intended the transfer to be a contemporaneous exchange for new value and (2) the transfer was in fact a "substantially contemporaneous" exchange.

The first element is readily satisfied, and essentially conceded, by the Trustee. UNB and the Debtors memorialized their intent to make a contemporaneous exchange for new value in the September 23, 2009 security agreement, which explicitly stated that the security interest in the X3 would be replaced by a security interest in the 330 Xi.

Whether the Transfer was in fact "substantially contemporaneous" for purposes of § 547(c)(1)(B) is a closer call considering the 34-day delay between the release of the lien on the X3

---

[4] UNB concedes that the safe-harbor provision of § 547(e)(2)(A), which would deem the transfer to have occurred at the time the Debtors took possession of the 330 Xi, does not apply because more than 30 days had elapsed before UNB perfected its security interest.

[5] Mo. Rev. Stat. § 400.9-303(1).

and the perfection of the lien on the 330 Xi. The Trustee argues that the Transfer was not substantially contemporaneous because it fell outside of the 30-day grace period provided in § 547(e)(2) for the perfection of security interests.[6] UNB, on the other hand, argues that the bright-line rule in § 547(e)(2) is inapplicable to § 547(c)(1)(B) and that the Court should adopt a flexible, case-by-case analysis in assessing whether an exchange is substantially contemporaneous. Under such an analysis, UNB maintains, the Transfer would qualify as a substantially contemporaneous exchange. In light of the Eighth Circuit's ruling in *In re Dorholt*,[7] as applied to the facts of this case, UNB's argument carries the day.

In *Dorholt*, the Eighth Circuit addressed the closely analogous question of whether the 10-day grace period then in effect for the perfection of a purchase money security interest in § 547(e)(3) determines substantial contemporaneity for purposes of § 547(c)(1).[8] Siding with the Seventh and Ninth Circuits, the Eighth Circuit declined to import the bright-line rule of § 547(e)(3) into the § 547(c)(1) context.[9]

> [T]he plain language of the statute [§ 547(c)(1)(B)] is at odds with the trustee's bright-line test. The statute uses a more elastic term, *substantially* contemporaneous. "The modifier 'substantial' makes clear that contemporaneity is a flexible concept which requires a case-by-case inquiry into all relevant circumstances." *Pine Top*, 969 F.2d at 328. Congress knew how to adopt a specific time limit; it did so in the purchase money security interest exception, § 547(c)(3). It chose a less rigid standard for § 547(c)(1), no doubt because that provision governs a wider variety of loans and credit transactions. We must construe the statute accordingly.[10]

Following this precedent, this Court also declines to adopt a bright-line test to determine whether the Transfer was in fact a substantially contemporaneous exchange for purposes of

---

[6] Section 547(e)(2) provides: "For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made– (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection (c)(3)(B) . . . ."

[7] 224 F.3d 871 (8th Cir. 2000).

[8] *Id*. at 872-74.

[9] *Id*. at 874 (citing *In re Marino*, 193 B.R. 907, 912-16 (B.A.P. 9th Cir. 1996), aff'd, 117 F.3d 1425 (9th Cir. 1997); *Pine Top Ins. Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 969 F.2d 321, 328-29 (7th Cir. 1992).

[10] *Id*. (emphasis in original).

§ 547(c)(1)(B). Rather, the Court applies a flexible analysis, taking into account (as did the *Pine Top* case cited in *Dorholt*)[11] the length of delay, the reason for delay, the nature of the transaction, the intentions of the parties, and the possible risk of fraud.

All of these factors are neutral or weigh in favor of a finding that the Transfer qualifies as a contemporaneous exchange for new value under § 547(c)(1). The length of the delay was not unreasonable, especially considering UNB actually released the lien on the X3 before it perfected the lien on the 330 Xi. The delay was not due to UNB's malfeasance or nonfeasance; rather, it was the result of UNB's apparent belief that its lien on the X3 would remain in effect until the notice of release was filed, instead of being released upon the execution of the amended security agreement. Under the circumstances here, it seems clear – and perfectly logical – that UNB had intended to release the lien on the X3 simultaneously with the perfection of the lien on the 330 Xi. And, in fact, the notice of release of the lien on the X3 and the notice of lien on the 330 Xi were filed almost simultaneously. With regard to the nature of and intent behind the transaction, the unequivocal documentary proof demonstrates that the transaction was structured, and the parties intended, to effect a one-for-one substitution of collateral. And finally, the Court finds no undue risk of fraud, other than the ever-present risk posed by a notice-of-lien system that relies on a purchaser's diligence.

In sum, the Court finds that for purposes of § 547(c)(1), the Transfer was an integral part of a transaction intended by the parties to be a contemporaneous exchange for new value and was in fact a "substantially contemporaneous" exchange.

Therefore, for the reasons stated above, the Court finds that, although he has established that the Transfer constitutes a preferential transfer under § 547(b), the Trustee cannot avoid the Transfer because it was part of a substantially contemporaneous exchange for new value shielded from avoidance under § 547(c)(1). A separate judgment will be entered contemporaneously with this memorandum opinion.

**ENTERED** this 8th day of July 2010.

/s/ Jerry W. Venters

---

[11] The Eighth Circuit did not recite specific factors that should be considered in determining whether the transaction was a substantially contemporaneous exchange because the trustee argued for application of a bright-line rule solely on legal grounds.

                        HONORABLE JERRY W. VENTERS
                        UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
Norman E. Rouse
J. Gordon Gregory